**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 23-9502**

———————————

In re:  MARK ANTHONY KEY,

       Respondent.

———————————

On Notice to Show Cause Before the Fourth Circuit Standing Panel on Attorney Discipline.

———————————

Argued:  January 28, 2026                         Decided:  July 28, 2026

———————————

Before QUATTLEBAUM, RUSHING, and BENJAMIN, Circuit Judges.

———————————

Suspension from practice imposed by unpublished per curiam opinion.

———————————

Mark Anthony Key, KEY LAW OFFICE, PC, New Hill, North Carolina, as Respondent. Carmen Hoyme Bannon, NORTH CAROLINA STATE BAR, Raleigh, North Carolina, as Prosecuting Counsel.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This matter comes before this Court's Standing Panel on Attorney Discipline on Notices to Show Cause entered on February 15, 2023, and March 10, 2023.

This Court's first notice to show cause issued at the direction of the Standing Panel on Attorney Discipline after Respondent Mark Anthony Key failed to timely file required documents in this Court in multiple cases. Upon receipt of notice that Respondent had been suspended from practice by the North Carolina State Bar for misconduct unrelated to that encompassed by the first notice, this Court issued a second notice, ordering Respondent to show cause why this Court should not impose reciprocal discipline identical to that imposed by the North Carolina State Bar.

On April 10, 2023, Respondent filed a combined response to the Court's show cause notices, by which he requested a hearing pursuant to Local Rule 46(g)(9). Respondent noted that he had appealed the North Carolina disciplinary order and asked that this Court refrain from any disciplinary action prior to a decision by the North Carolina Court of Appeals. This Court placed the matter in abeyance until the completion of all proceedings in North Carolina. On June 23, 2025, the Court appointed Bar Counsel for the North Carolina State Bar as prosecuting counsel in this proceeding, issued a briefing schedule, and directed the Clerk to schedule oral argument.

2

I.

A.

On February 15, 2023, this Court issued a notice requiring Respondent to show cause why he should not be disciplined for failure to timely file required documents in multiple cases in the Fourth Circuit.

Respondent first came to the attention of the Standing Panel on Attorney Discipline during his representation of the appellant in *United States v. Quentin Tavaris Bryant*, Fourth Circuit No. 22-4590. Respondent filed a notice of appeal in that case on October 18, 2022, and the Clerk's Office issued a docketing notice the next day requiring the filing of an appearance form and docketing statement. Respondent failed to file either document, and the Clerk's Office issued a follow-up notice on November 16, 2022, reminding Respondent of his obligation to file the documents, and Local Rule 45 notices on November 22, 2022, and December 8, 2022, warning that the appeal could be dismissed if the deficiency was not cured. Respondent did not respond.

The Clerk's Office staff left several messages for Respondent which were not returned. The final call resulted in a message that Respondent's voicemail was full. On January 5, 2023, the Clerk of Court emailed Respondent reminding him of his responsibility to file an appearance form and docketing statement. On January 9, 2023, the Clerk's Office issued a status of counsel notice to both Appellant and Respondent, requiring return of the status of counsel form no later than January 17, 2023.

Again, Respondent failed to file the required documents. On February 9, 2023, the Clerk's Office issued a Local Rule 45 notice to both Appellant and Respondent indicating

3

that the case would be subject to dismissal if the existing deficiencies were not cured. The appellant, acting pro se, eventually returned the status of counsel forms and new counsel was appointed under the Criminal Justice Act.

Respondent has a history of failing to file required documents in this Court. *United States v. Miguel Hutchinson*, Fourth Circuit No. 21-4570, was dismissed under Local Rule 45 after Respondent failed to file an appearance form and docketing statement, and this Court issued a notice to Respondent warning of potential attorney discipline under Local Rule 46 for failure to satisfy fee requirements in *United States v. Derrick Lee Daye*, Fourth Circuit No. 23-4028.

### B.

On September 30, 2021, the North Carolina State Bar initiated disciplinary action by filing a complaint against Respondent. A hearing panel of the Disciplinary Hearing Commission (DHC) of the North Carolina State Bar conducted a seven-day trial beginning on November 28, 2022. On February 20, 2023, the DHC issued its order finding and concluding that Respondent had committed multiple violations of the North Carolina Rules of Professional Conduct, including by engaging in criminal activity consisting of federal and state tax violations and mortgage fraud, by failing to communicate with a client and safeguard her confidential information, by displaying disrespect for the court in a criminal trial, and by making false statements of material fact during the State Bar's misconduct

4

investigation.[1] The DHC imposed a five-year suspension from practice, set certain conditions for reinstatement, and provided that Respondent may seek a stay of the balance of the suspension after three years if he complied with specified conditions.

The parties cross-appealed from the DHC's disciplinary order, with the Respondent arguing that the DHC erred in finding any misconduct and the State Bar arguing that the DHC erred in failing to consider certain aggravating factors when deciding the severity of discipline to be imposed. In an opinion filed June 18, 2024, the North Carolina Court of Appeals found no error in the DHC's findings of misconduct but agreed with the State Bar that the DHC had erred in determining the appropriate discipline. The Court of Appeals vacated the portion of the order suspending Respondent's law license and remanded the matter to the DHC for further proceedings.

On November 21 and 22, 2024, the DHC conducted post-remand proceedings to determine the appropriate discipline in light of the Court of Appeals' opinion. By order dated February 27, 2025, the DHC entered an order reimposing the same discipline that it previously ordered, suspending Respondent's law license for five years, imposing

---

[1] The DHC concluded Respondent had engaged in conduct violating the following North Carolina Rules of Professional Conduct: Rule 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation); Rule 8.4(b) (criminal acts reflecting adversely on the lawyer's trustworthiness or fitness); Rule 1.15-2(a), (b), (f), (g), (k), (n) (various trust accounting requirements); Rule 1.15-3(d)(1) and (2) (reconciliations of general trust accounts); Rule 1.4(a) and (b) (client communication); Rule 1.6(a) (confidentiality); Rule 1.16(a) and (d) (failure to withdraw when terminated and protect client's interests upon termination of representation); Rule 3.5(a)(4)(B) (conduct intended to disrupt tribunal); Rule 8.1(a) (failure to respond to inquiry from disciplinary authority); and Rule 8.1(b) (false statements in connection with disciplinary matter).

5

conditions for reinstatement, and allowing Respondent to seek a stay of the balance of the suspension after three years if he complied with specified conditions.

## II.

## A.

Rule 46(c) of the Federal Rules of Appellate Procedure provides:

> A court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule. First, however, the court must afford the attorney reasonable notice, an opportunity to show cause to the contrary, and, if requested, a hearing.

This Court's Local Rule 46(g)(1)(c) further states that a member of the bar of the Fourth Circuit may be disciplined for "conduct with respect to this Court which violates the rules of professional conduct or responsibility in effect in the state or other jurisdiction in which the attorney maintains his or her principal office, the Federal Rules of Appellate Procedure, the local rules of this Court, or orders or other instructions of this Court." The standard of proof in attorney discipline matters is clear and convincing evidence. *In re Liotti*, 667 F.3d 419, 426 (4th Cir. 2011).

Respondent claims that he did not receive this Court's docketing notice or any of the Court's subsequent follow-up notices in *Bryant*. Nor, he says, did he receive the Clerk's email reminding him of his responsibilities or any of the voicemails left by Clerk's Office staff. With regard to the notices and email, Respondent opines that the Clerk's Office may have used an old email address. Court records indicate, however, that at least the Clerk's email was sent to the address identified by Respondent as correct.

6

Regarding *Daye*, Respondent notes that he did not file the notice of appeal in that case and states he was unaware any appeal was pending. In the *Hutchinson* matter, Respondent states that, although he filed the notice of appeal, he had informed the Appellant that he would not represent him on appeal.

Respondent's office is in North Carolina. Therefore, that state's rules of professional conduct apply. Rule 1.3 of the North Carolina Rules of Professional Conduct requires that a lawyer "act with reasonable diligence and promptness in representing a client."

This Court's Local Rule 3(b) provides that "counsel filing a notice of appeal . . . must complete a docketing statement . . . and file it with the Clerk of the Court of Appeals within 14 days of docketing of the appeal," and that failure to do so "will cause the Court to initiate the process for dismissing a case under Local Rule 45."

Respondent was obligated to complete and file a docketing statement in the cases for which he filed a notice of appeal by operation of Local Rule 3(b). Although the court issues docketing notices pointing out the requirement, the obligation exists independent of the notice. Accordingly, there is no need for this Court to weigh the credibility of Respondent's claims related to whether he received the Court's notices, the Clerk's email, or staff's voicemails in *Bryant* and *Hutchinson*. Respondent's failure to complete and file the docketing statements in those cases violated Local Rule 3(b) regardless of whether he received the docketing notice or any subsequent communication. Respondent's failure to complete and file the required documents—the potential penalty for which includes dismissal of the appeal under Local Rule 45—likewise displays a lack of diligence and promptness in violation of Rule 1.3 of the North Carolina Rules of Professional Conduct.

7

We conclude that Respondent's failure to timely file required documents in this Court constitutes disciplinable misconduct.

## B.

We now turn to the question of reciprocal discipline. Rule 46(b)(1)(A) of the Federal Rules of Appellate Procedure provides that "a member of the court's bar is subject to suspension or disbarment by the court if the member . . . has been suspended or disbarred from practice in any other court." When imposing discipline based on a state court's action, we presume that discipline identical to that imposed by the state court is appropriate. 4th Cir. R. 46(g) (rules of disciplinary enforcement). And although state disciplinary decisions do not bind federal courts, "they are entitled to great respect." *Wrighten v. United States*, 550 F.2d 990, 991 (4th Cir. 1977) (citing *In re Ruffalo*, 390 U.S. 544, 547, rehearing denied, 391 U.S. 961 (1968)). Therefore, we will impose the presumptive discipline so long as three requirements are met: "(1) the state must have given the attorney notice of the charges and an opportunity to be heard; (2) the evidence must support the findings made; and (3) there must be no other 'grave reason' for ignoring the actions taken." *Id.* (citing *Selling v. Radford*, 243 U.S. 46, 51 (1917)).

Respondent advances two primary arguments, correlating with the first two *Selling* requirements—that the process by which the DHC reached its findings of fact and conclusions of law was so deficient that it deprived him of due process and that the DHC lacked sufficient evidence to support its conclusions of law. Regarding the final *Selling* requirement, Respondent argues that the discipline imposed by the DHC is too harsh and

8

that imposition of identical reciprocal discipline by this Court would amount to a grave injustice.

Respondent's arguments are unavailing. We begin with the first *Selling* requirement—whether Respondent received notice of the charges against him and an opportunity to be heard. Respondent claims that he was not informed of the identity of the employees for whom he was accused of failing to pay taxes or of the clients whose entrusted funds he failed to deliver, and that he had no opportunity to conduct discovery to clarify the charges against him and prepare for his defense. The record tells a different story.

Attorney discipline proceedings in North Carolina are conducted by the DHC, a body created by statute to adjudicate attorney discipline and disability matters. N.C. Gen. Stat. § 84-28.1 (2025). The DHC is empowered to "hold hearings in discipline, incapacity and disability matters, make findings of fact and conclusions of law after these hearings, enter orders necessary to carry out the duties delegated to it by the [North Carolina State Bar] Council, and tax the costs to an attorney who is disciplined or is found to be incapacitated or disabled, and comply with the requirements of this Chapter." *Id.* § 84-28.1(b). Proceedings before the DHC must "conform as nearly as practicable with the requirements of the North Carolina Rules of Civil Procedure and for trial of nonjury civil cases in the superior courts." 27 N.C. Admin. Code 1B.0114(a). A notice pleading standard applies—the State Bar's complaint must "allege the charges with sufficient precision to clearly apprise the defendant of the conduct which is the subject of the complaint." *Id.* at 1B.0115(b). Discovery is available to the parties according to the North Carolina Rules of

9

Civil Procedure, *id.* at 1B.0115(h), and admissibility of evidence is governed by the rules of evidence applicable in the superior court of North Carolina, *id.* at 1B.0114(g).

At argument, Respondent stated that he had no opportunity to conduct discovery and thus was left without notice of the specific charges against him and without the ability to launch an adequate defense. In reality, Respondent submitted two sets of interrogatories and document requests, to which the State Bar responded by providing thorough answers and producing extensive relevant documents. When pressed, Respondent conceded that the State Bar had produced certain documents but argued that the State Bar had failed to respond to any interrogatory beyond objecting on the basis of attorney client privilege, leaving Respondent unable to ascertain the information he needed related to the identities of the relevant employees and clients.

Respondent's characterization of the State Bar's response to his interrogatories is belied by the record. The State Bar answered each interrogatory either substantively or with an objection. The answers and documents produced were sufficient to apprise Respondent of the identities of the relevant employees and clients. To the extent Respondent believed the answers to be nonresponsive or incomplete, he could have pursued the matter through motions practice. He did not.

We are satisfied that Respondent had notice of the charges against him and access to discovery, of which he fully availed himself. The seven-day DHC hearing, at which Respondent presented evidence and witnesses, personally testified, and cross-examined the

10

State Bar's witnesses, provided ample opportunity for him to be heard. We find no want of due process in the DHC's proceedings.[2]

Respondent's claims related to the sufficiency of the evidence in the DHC proceedings are equally unconvincing. Far from the "infirmity of proof" that would be required for this Court to depart from the discipline imposed by the DHC, the record here is replete with evidence showing Respondent's misconduct. *Selling*, 243 U.S. at 51. The North Carolina Court of Appeals found as much in a thorough and well-reasoned opinion, which meticulously addressed each of Respondent's objections to the DHC's findings and conclusions. We will not rehash each argument here. Suffice it to say that Respondent has presented no compelling reason why this Court should reject the conclusions of the North Carolina court.

Finally, we cannot agree that imposition of identical discipline to that imposed in North Carolina would work a "grave injustice." Respondent's arguments on this point are premised on the idea that he is, at most, liable for a few misdemeanor violations related to his failure to timely file his tax returns and minor instances of trust account commingling. Having rejected that premise, we see no injustice in imposing identical reciprocal discipline.

---

[2] The Court notes with disapproval Respondent's inaccurate and misleading statements regarding the State Bar's answers to interrogatories and observes that a material misrepresentation to the Court during attorney discipline proceedings may constitute an independent violation of the relevant rules of professional conduct rising to the level of disciplinable misconduct. *See, e.g.*, North Carolina Rules of Professional Conduct Rule 3.1 (Meritorious Claims and Contentions). The Court declines to pursue the matter, however, and does not consider Respondent's misleading statements as a factor in its decision today.

III.

Upon consideration of the briefing and oral arguments in this matter, we find no want of due process, infirmity of proof, or other grave reason which would preclude giving the decision of the Disciplinary Hearing Commission of the North Carolina State Bar its presumptive effect under this Court's Local Rule 46(g) and the Supreme Court's decision in *Selling*. The Court therefore suspends Mark Anthony Key from practice before the Fourth Circuit until such time as he is reinstated to practice by the North Carolina State Bar.

In light of our decision to impose reciprocal discipline suspending Respondent from practice in the Fourth Circuit, the Court declines to impose additional discipline related to Respondent's failure to timely file documents in this Court.

*SO ORDERED*